UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MICHAEL HARDY and DIANE SHEPHERD,

                         Plaintiffs,

                - against -

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, HON. KEECHANT L. SEWELL,
Commissioner of the New York City Police Department,
CAPTAIN LARRY MEYERS (Shield No. 5284), POLICE
OFFICER KIERSTEN L CHAMBERS (Shield No.26702 of
79th Precinct), POLICE OFFICER KONRAD TYBOROWSKI
(Shield No. 27515 of 79th Precinct), POLICE OFFICERS
JOHN DOES Nos. "1" TO "10" (Actual Names Unknown,
intended to be Police Officers who were involved in the arrest
of the Plaintiffs on February 23, 2022 from the 79th Precinct),

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**
Dkt No. 23 CV 3794
**THE PLAINTIFFS
DEMAND A JURY TRIAL
ON ALL ISSUES**

       The Plaintiffs, by their attorney, Matthew A. Kaufman, Esq., does state and say as and for

their Complaint as follows:

1.      The jurisdiction of this Court is invoked by the Plaintiff pursuant to Title 28 of the

       United States Code, Sections 1331, 1343(3) & (4) and 1367.

2.      Venue is properly laid in the Eastern District of New York under 28 U.S.C.

       §1391(b):

       a.      The claims initially arose in this District; and,

       b.      The Plaintiffs reside in this District.

**JURY DEMAND**

3.     The Plaintiffs demand a trial by jury on all issues pursuant to the Seventh

Amendment to the United States Constitution and Fed. R. Civ. P. 38.

**NATURE OF PROCEEDINGS**

4.     This is a proceeding for compensatory and punitive damages owing to the

Plaintiffs as a result of violations of their Civil Rights under the Fourth,

Thirteenth and Fourteenth Amendments to the Constitution of the United States

and under Federal law, Title 42 of the United States Code, Section 1983.

Supplemental claims are also asserted against Defendants pursuant to 28 U.S.C. §

1367.

5.     Defendants committed these unlawful violations of the Plaintiffs' Federal and

State Constitutional rights in bad faith in willful disregard of the Plaintiffs'

Constitutional rights to their privacy, safety and property rights, under color of

state. Defendants' conduct was abusive and punitive, in retaliation to the Plaintiffs

assertion of their rights to be free from warrantless intrusions into the

unambiguous boundaries of their apartment by the government as guaranteed

under the Fourth and 14th Amendments to the United States Constitution, *Payton*

*v. New York,* 445 U.S. 573, 590 [1980]. Defendants further acted with knowing

and malicious forethought by arresting both Plaintiffs, allegedly for obstructing

governmental administration as well as other criminal acts: all of which charges

were frivolous, and all of which were later dismissed due to "lack of evidence.

6.    Among Defendants wrongful conduct and evils included Defendants' physical battering the apartment door with metal objects in an attempt to frighten and obtain unlawful entry into Plaintiffs' apartment without a warrant.

7.    Defendants unlawful conduct subjugating Michael Hardy to "badges" and "indicia" of slavery contrary to due process and section 2 of the Thirteenth Amendment by publicly displaying him partially naked, bound, and later shackled.

## PARTIES

8.    The Plaintiff, Michael Hardy is a citizen of the United States of America, County of Kings, City and State of New York.

9.    The Plaintiff, Diane Shepherd is a citizen of the United States of America, County of Kings, City and State of New York.

10.    The Plaintiff, Mr. Hardy is a person of African-American descent with dark skin.

11.    The Plaintiff, Ms. Shepherd is a person of African-American descent with dark skin.

12.    Defendant City of New York [hereinafter referred to as "City"]:

    a.    At all times material hereto is a Municipal Corporation, duly formed and created pursuant to the laws and statutes of the State of New York.

    b.    At all times material hereto, Defendant City, by its agents, servants and employees, as well as by Defendant New York City Police Department [hereinafter "NYPD"] was responsible for the training and instruction of individuals employed by the NYPD.

13.    Defendant Keechant L. Sewell,  is the Commissioner of Defendant NYPD [hereinafter referred to as "Sewell"] and is sued here in her representative capacity as the Commissioner of Defendant NYPD.

14.  Defendant Captain Larry Meyers (Shield No. 5284), at all times material hereto, is a Police Officer in the employ of Defendants City and/or NYPD [hereinafter referred to as "Meyers"].

    a.  Upon information and belief, on February 23, 2022, Defendant Meyers was a Lieutenant employed by Defendant City.

    b.  Upon information and belief, on February 23, 2022, Defendant Meyers was a Lieutenant employed by Defendant NYPD.

    c.  Upon information and belief, Defendant Meyers was one of the members of Defendant NYPD involved in the arrest of the Plaintiff Hardy on February 23, 2022.

    d.  Upon information and belief, Defendant Meyers is one of the members of Defendant NYPD involved in the arrest of the Plaintiff Shepherd on February 23, 2022.

15.  Defendant Police Officer Kiersten L Chambers (Shield No. 26702), at all times material hereto, is a Police Officer in the employ of Defendants City and/or NYPD and was assigned to the 79th Precinct on February 23, 2022 [hereinafter referred to as "Chambers"].

16.  Defendant Police Officer Konrad Tyborowski (Shield No. 27515) is a Police Officer in the employ of Defendants City and/or NYPD and was assigned to the 79th Precinct on February 23, 2022 [hereinafter referred to as "Tyborowski"].

17.  At all times material herein, Defendants Police Officers John Doe Nos. "1" to "10" (Actual Names Unknown) upon information and belief, were members of the Defendant NYPD assigned to the 79th Precinct on February 23, 2022 and were engaged in the entry of the Plaintiffs' apartment and the arrest of the Plaintiffs on February 23, 2022.

18. Hereinafter, Defendants Meyers, Chambers, Tyborowski and Police Officers "John Does Nos. '1' through '10'" may be collectively referred to as the "Defendant Police Officers."

19. Defendant Sewell is and was at all times responsible for the policies, practices and/or customs of Defendant NYPD, a municipal agency of Defendant City.

20. Defendant Sewell is and was at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the Police Officers under his command who are or were employed by Defendants City and NYPD, including the Defendants Police Officers herein. She is sued in his official capacity as a policy maker.

21. Defendant City is responsible, *inter alia*, for the management, administration, conduct and supervision of all personnel employed by Defendant NYPD to protect the safety of the public and the property of the public, such as the Plaintiff herein.

22. Each and every act of Defendants alleged herein was done by Defendants, and each of them as individuals, or through their employees, servants and/or agents, under color and authority of the laws, statutes, ordinances, customs and usages of the State of New York.

23. All of the acts of the individual Defendants alleged herein were done while acting within the scope of their employment with Defendants City and/or NYPD.

24. All of the acts of the individual Defendants alleged herein were done while acting in furtherance of their employment by Defendant City and/or NYPD.

25.     Upon further information and belief, based on the foregoing, Defendants City, NYPD and/or Sewell were not only on notice of the above-complained about conditions, but failed or otherwise refused to take action and otherwise implement proper safety mechanisms, including better training, hiring.

## BACKGROUND FACTUAL ALLEGATIONS

26.     At all times material hereto, the Plaintiff, Michael Hardy resided in the County of Kings, City and State of New York.

27.     At all times material hereto, the Plaintiff, Diane Shepherd resided in the County of Kings, City and State of New York.

28.     On February 23, 2022, the Plaintiff, Michael Hardy was a lawful tenant and lawfully present in Apartment 5Z at 390 Nostrand Avenue, Brooklyn, New York [hereinafter "Apartment 5Z"].

29.     On February 23, 2022, the Plaintiff, Diane Shepherd was a tenant and lawfully present in "Apartment 5Z."

30.     On February 23, 2022, at approximately 9:00 p.m. the Plaintiffs Michael Hardy and Diane Shepherd were inside in the bedroom of "Apartment 5Z."

31.     On February 23, 2022, at approximately 9:00 p.m., the door to "Apartment 5Z" was closed and locked while the Plaintiffs Michael Hardy and Diane Shepherd were inside the apartment.

32.     On February 23, 2022, at approximately 9:00 p.m., Defendant Meyers along with "Defendant Police Officers" went to "Apartment 5Z."

33. On February 23, 2022, at approximately 9:00 p.m., Defendant Meyers knocked and banged loudly on the door to "Apartment 5Z."

34. On February 23, 2022, at approximately 9:00 p.m., one or more of the "Defendant Police Officers" knocked on the door to "Apartment 5Z."

35. The Plaintiff, Michael Hardy, who was only partially dressed, left his bedroom and went to answer the door.

   a. Mr. Hardy, who did not have any shirt, nor any shoes or socks on at the time, opened the door to "Apartment 5Z" a small distance in order to see and speak to the person or persons on the other side of the door who had knocked on the door to "Apartment 5Z."

   b. When the Plaintiff, Michael Hardy partially opened the door to "Apartment 5Z," he saw a caucasian police officer member of Defendant NYPD wearing a "white-shirt" who upon information and belief, was Defendant Meyers [at times referred to as the "white-shirt officer" and/or Defendant Meyers].

   c. When the Plaintiff, Michael Hardy partially opened the door to "Apartment 5Z," he saw approximately four more caucasian "Defendant Police Officers" in the hallway.

36. When the Plaintiff, Michael Hardy partially opened the door to "Apartment 5Z," the approximately four "Defendant Police Officers" were armed with weapons.

37. The Plaintiff, Michael partially opened the door to "Apartment 5Z," placing his body blocking Defendant Meyers and the officers view of the inside.

38.     The "white shirt officer," who upon information and belief, was Defendant Meyers and spoke to Mr. Hardy, was wearing a "body-worn camera" ["BWC"].

39.     The "white shirt officer," who upon information and belief, was Defendant Meyers, did not have his "BWC" activated when he initially spoke to Mr. Hardy at this time.

40.     The "white-shirt officer" asked Mr. Hardy some questions.

41.     The "white-shirt officer" asked Mr. Hardy whether there was anyone else in the apartment and Mr. Hardy told him there was.

42.     The "white shirt officer," who upon information and belief, was Defendant Meyers, did not have his "BWC" activated when he initially spoke to Mr. Hardy upon opening the door to "Apartment 5Z."

43.     The "white-shirt officer" told Mr. Hardy he was following-up on a situation that occurred earlier that morning.

44.     Mr. Hardy told the "white-shirt officer" that he was not around earlier in the day and had not heard about any situation that morning.

45.     After further conversation, the "white-shirt officer" turned on his "BWC."

46.     After the "white-shirt officer" turned on his "BWC," he continued to ask Mr. Hardy questions.

47.     The white-shirt officer" told Mr. Hardy the police investigation had nothing to do with "Apartment 5Z," and Mr. Hardy continued to refuse to permit the "white-shirt officer," or any of the other police officers from entering "Apartment 5Z."

48.     When the conversation finished with the "white shirt officer," Mr. Hardy closed the door to "Apartment 5Z."

49.     The "white-shirt officer" and other Defendant Police Officers remained in the hallway outside "Apartment 5Z" after Mr. Hardy closed the door.

50.     The "white-shirt officer" and other Defendant Police Officers remained in the hallway talking among themselves after Mr. Hardy closed the door.

51.     While the door to "Apartment 5Z" was closed, Mr. Hardy heard the Defendant Police Officers speaking loudly in the hallway.

52.     Mr. Hardy heard the Defendant Police Officers discuss in the hallway about another person being in "Apartment 5Z," there being a gun in the apartment and that a "round" came from "Apartment 5Z."

53.     Suddenly, upon information and belief, shortly after 9:00 p.m., Mr. Hardy heard the Defendant Police Officers make a loud banging on the door, ringing the door bell multiple times to "Apartment 5Z," and yelling "Police, open the door."

54.     Upon information and belief, Defendants Police Officers used some form of metal objects to bang against the door to "Apartment 5Z."

55.     The Plaintiff, Ms. Diane Shepherd was still sleeping in the bedroom when the Defendant Police Officers pounded on "Apartment 5Z's" door.

56.     Ms. Shepherd was woken-up by the loud banging the Defendant Police Officers made on the Door to "Apartment 5Z" and came out of the bedroom.

57.     Mr. Hardy refused to open the door again, telling Defendant Police Officers that he had already spoken to them and he did not want them to break his door.

58.   Defendant Police Officers demanded Mr. Hardy open the door to "Apartment 5Z," stating they wanted to talk to him but did not want to break his door.

59.   Mr. Hardy told these Defendant Police Officers that he already told the other officer everything, and he was not going to talk to them further.

60.   Mr. Hardy told Defendant Police Officers he would not let them in without a warrant.

61.   Mr. Hardy told the Defendant Police Officers he did not know anything about an incident that morning, and that he told the other officer everything he knows.

62.   Mr. Hardy told the Defendant Police Officers to stop harassing him, it was 9:00 o'clock the end of the day and they should leave him alone.

63.   Mr. Hardy further told the Defendant Police Officers they were invading his privacy and not to "break in his door."

64.   The Defendant Police Officers stated they were there because it "involved someone's safety."

65.   While speaking to the Defendant Police Officers, Mr. Hardy heard the Police Officers using metal objects on the door and objected to them continuing to try and get into his apartment, placing Mr. Hardy in fear they would break in.

66.   The Defendant Police Officers continued making sounds on the door to "Apartment 5Z" attempting to force the door open.

67.   The Defendant Police Officers while banging on the door damage to the metal door,  Exhibit "A," promised Mr. Hardy that nothing would happen to him, they were just investigating something which happened earlier.

-10-



**EXHIBIT "A"**

68.  Mr. Hardy, fearing for his safety that Defendant Police Officers would force the door open, relented and opened the door to "Apartment 5Z."

69.  Defendant Police Officers pushed opened the "Apartment 5Z" door and four or five armed police officers carrying assault style rifles and wearing tactical gear with bullet proof vests surrounded Mr. Hardy in the apartment.

70.  Mr. Hardy was partially undressed at the time Defendant Police Officers came into "Apartment 5Z," and was in the process of putting on his socks and shirt.

71.   The Defendant Police Officers restrained Mr. Hardy, grabbing the sock from Mr.

Hardy's hand and throwing it aside. preventing him from putting pt on his foot,

72.   Defendant Police Officers refused to permit Mr. Hardy to put on a shirt, and

placed separate handcuffs on each of Mr. Hardy's wrists, Exhibit "B."

 **Exhibit "B"**

73.  Ms. Shepherd, who was standing near Mr. Hardy when Defendant Police Officers entered "Apartment 5Z," used Mr. Hardy's cell phone to make a video recording of the Defendant Police Officers intering "Apartment 5Z" and their restraining Mr. Hardy.

74.  One of the Defendant Police Officers told Mr. Hardy he had not done anything wrong, but "Defendant Police Officers" were there for a "wellness check."

75.  Ms. Shepherd pleaded with Defendant Police Officers to leave Mr. Hardy alone telling Defendants Mr. Hardy he did not do anything, and she was then arrested.

76.  Mr. Hardy, handcuffed and partially naked without any shirt, shoes or left sock, was dragged into the hallway while restrained by Defendant Police Officers searched "Apartment 5Z."

   a.  Defendant Police Officers at this time, searched Mr. Hardy's apartment without his consent or permission.

   b.  Defendant Police Officers searched Mr. Hardy's apartment, "Apartment 5Z," without a search warrant.

   c.  Defendant Police Officers searched a closed closet in Mr. Hardy's apartment, "Apartment 5Z" [hereinafter "5Z Closet"].

   d.  Defendant Police Officers located various items which Mr. Hardy used as part of his employment in martial arts training, which included ceremonial swords wrapped in clothe or towels in the "5Z Closet."

77.  Defendant Police Officers dragged Mr. Hardy out of the building, partially naked without a shirt, shoes or left sock, in the freezing air in front of the general public.

78.     Mr. Hardy pleaded with Defendant Police Officers while he kept telling them he had not done anything wrong.

79.     Defendant Police Officers turned and pushed Mr. Hardy's face against a nearby police transport vehicle, injuring Mr. Hardy's left hand, left shoulder and back.

80.     Mr. Hardy continued to plead with Defendant Police Officers saying he did nothing wrong when one of the Defendants struck Mr. Hardy in the mouth.

81.     While Defendant Police Officers were striking and pushing Mr. Hardy, one of the Defendant Police Officers claimed to have injured his arm.

82.     Defendant Police Officers brought both Mr. Hardy and Ms. Shepherd to the 79th Precinct where they were searched.

83.     While at the 79th Precinct, Mr. Hardy requested and was denied medical attention.

84.     Mr. Hardy was told at the 79th Precinct that he was being charged with assault and that Ms. Shepherd was being charged with not showing herself.

85.     After several hours, Defendant Police Officers:

    a.      Brought Mr. Hardy, bound and shackled at his fee and partially naked, without shoes, a left sock nor a shirt in the freezing rain to Criminal Court for the City of New York for Kings County [hereinafter referred to as the , "Criminal Court"];

    b.      Brought Ms. Shepher to Criminal Court;

**CRIMINAL CHARGES AGAINST Mr. HARDY**

86.     At the Courthouse, Mr. Hardy was told by the Court personnel that could not be arraigned because he was not wearing a shirt.

-14-

87.   Mr. Hardy was then given a jacket to cover his body by a third party so he could appear before the Court and be arraigned

88.   Mr. Hardy was arraigned on February 25, 2022 in the Criminal Court of the City of New York, Part AR-3.

89.   At his arraignment, Mr. Hardy was told Defendant Police Officers later obtained a warrant for "Apartment 5Z" [hereafter referred to as the "5Z Warrant"].

90.   Defendant Police Officers later returned to "Apartment 5Z" with the "Search Warrant" and seized items from the "5Z Closet," including ceremonial swords.

91.   Mr. Hardy was charged, *inter alia*, with criminally possessing the ceremonial swords, as well as the other items seized from the "5Z Closet."

92.   Mr. Hardy was charged at his arraignment at the "Criminal Court" by Criminal Complaint, Kings County bearing Docket No. CR-004810-22KN ["Hardy Criminal Complaint"] with various crimes.

93.   The "Hardy Criminal Complaint" charged Mr. Hardy with the Crimes of:

a.   PL 195.05 - Obstructing Governmental Administration in the Second Degree;
b.   PL 120.05(3) - Assault in the Second Degree;
c.   PL 120.00(1) - Assault in the Third Degree;
d.   PL 195.05 - Obstructing Governmental Administration in the Second Degree;
e.   PL 110/120.00(1)  - Attempted Assault in the Third Degree;
f.   PL 120.15 - Menacing in the Third Degree;
g.   PL 240.26(1) - Harassment in the Second Degree;
h.   PL 265.02(1) CRIMINAL Possession of a Weapon in the Third Degree;
i.   PL 220.03 - Criminal Possession of a Controlled Substance in the Seventh Degree;
j.   PL 265. 01 (2) - Criminal Possession of a Weapon in the Fourth Degree ( 6 Counts);

94.     The Hardy Criminal Complaint was verified by Defendant Chambers on February
        25, 2022.

95.     Defendant Chambers stated in the Hardy Criminal Complaint he was told by
        Defendant Tyborowski that Mr. Hardy bit and injured Defendant Tyborowski.

96.     Mr. Hardy entered a plea of not guilty to all the charges at the time of his
        arraignment.

97.     At Mr. Hardy's arraignment, the Assistant District Attorney ["ADA"] represented
        that Mr. Hardy had not cooperated with a "Wellness Check" and refused to allow
        the Defendant Police Officers "see the people inside the apartment."

98.     During Mr. Hardy's arraignment, the ADA represented to the Court that Mr.
        Hardy refused to let the police officers see the people inside.

99.     Mr. Hardy was released by the Court under supervision and his case was
        adjourned to April 13, 2022. At all times, Mr. Hardy maintained his innocense
        and that the charges against him were false and fabricated.

100.    The "Hardy Criminal Complaint" contained false and untrue allegations as a
        pretext to justify the unlawful and warrantless search, unlawful and warrantless
        arrest and unlawful and warrantless seizure of Mr. Hardy.

101.    Defendant Police Officers knew, or should have known, the allegations and
        statements they made in the Criminal Court Complaint were not true, either in
        whole or part, but were made so as to justify his conduct and the conduct of
        Defendant Police Officers during their warrantless search, warrantless arrest and
        warrantless seizure of Mr. Hardy and Ms. Shepherd.

-16-

102.   On April 13, 2022, Mr. Hardy appeared in the Criminal Court.

103.   At the April 13, 2022 Criminal Court appearance, the Prosecution moved to

dismiss the following charges against Mr. Hardy, which the Court granted:

    a.     PL 120.05(3) - Assault in the Second Degree; and
    b.     PL 265.02(1) CRIMINAL Possession of a Weapon in the Third Degree.

104.   The remaining Criminal case against Mr. Hardy was adjourned to May 31, 2022.

105.   On May 31, 2022, Mr. Hardy's case was adjourned by the Court to August 8,

2022.

106.   On August 8, 2022, Mr. Hardy appeared in the Criminal Court, Part AP-2 in

response to the remaining charges in the "Hardy Criminal Complaint."

107.   On August 8, 2022, the Prosecution moved to:

        "dismiss this case pursuant to insufficient evidence."

108.   The Criminal Court (Hon. Ing O'Neale, J.) granted the motion by the Prosecution,

and dismissed all the remaining charges against Mr. Hardy in the "Hardy Criminal

Complaint" on August 8, 2022.

## VIOLATION OF PROBATION CHARGES AGAINST Mr. HARDY

109.   At the time of the February 23, 2022 arrest, Mr. Hardy was on probation from a

prior conviction in Queens County on June 24, 2021.

110.   As a result of the February 23, 2022 arrest, Mr. Hardy was charged with a

Violation of his Probation [hereinafter, "Hardy VOP"] based on the false and

misleading charges made by Defendant Police Officers.

111.    Mr. Hardy was required to appear in the Supreme Court of the State of New York, Queens County, Part K-13 to respond to the "Hardy VOP" [hereinafter "VOP Proceedings"].

112.    On March 29, 2022, Mr. Hardy appeared for the "VOP Proceedings," which were adjourned to June 7, 2022 and Mr. Hardy's probation status was continued.

113.    On June 7, 2022, the "VOP Proceedings" were adjourned to August 15, 2022 by the Court and Mr. Hardy's probation status was continued.

114.    On August 15, 2022, the charges were withdrawn in the "VOP Proceeding" by the Court and Mr. Hardy's probation status was continued.

## CRIMINAL CHARGES AGAINST Ms. SHEPHERD

115.    Ms. Shepard was arraigned on February 25, 2022 in AR-1.

116.    Ms. Shepherd was charged at her arraignment at the "Criminal Court" by Criminal Complaint, Kings County bearing Docket No. CR-004804-22KN ["Shepherd Criminal Complaint"] with various crimes.

117.    The "Shepherd Criminal Complaint" charged Ms. Shepherd with the crimes of::

    a.    PL 195.05 Obstructing Governmental Administration in the Second Degree;
    b.    PL 220.03 PL 265.01(2) Criminal Possession of a Controlled Substance in the Seventh Degree; and,
    c.    PL 265.01(2) Criminal Possession of a Weapon in the Fourth Degree (6 Counts)

118.    The Criminal Court Complaint contained false and untrue allegations as a pretext to justify the unlawful and warrantless search, unlawful and warrantless arrest and unlawful and warrantless seizure of Ms. Shepherd.

-18-

119.   Defendant Police Officers knew the many of the allegations and statements made in the Criminal Court Complaint were not true, either in whole or part, but were made so as to justify his conduct and the conduct of Defendant Police Officers during their warrantless search, warrantless arrest and warrantless seizure of Mr. Ms. Shepherd and Mr. Hardy.

120.   Ms. Shepherd was released on her own recognizance and the criminal case against her was adjourned to April 27, 2022.

121.   On May 31, 2022, all the charges against Ms. Shepherd were completely dismissed by the Criminal Court.

122.   Upon further information and belief, based on the foregoing, Defendants were not only on notice of the above-complained about conditions, but failed or otherwise refused to take action and otherwise implement proper safety mechanisms, including better training, hiring.

### PLAINTIFF MICHAEL HARDY'S FIRST CLAIM FOR RELIEF
**(Violation of Civil Rights, 42 USC § 1983)**

123.   Plaintiffs repeats and realleges each and every allegation in paragraphs "1" to "122" with the same force and effect as if herein more fully set forth.

124.   All of the above Defendant Police Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiffs of their rights, privileges and immunities secured to them by the Constitutions and laws of the United States and New York.

-19-

125.    All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

126.    All of the aforementioned acts deprived the Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

127.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as Police Officers, with all the actual and/or apparent authority attendant thereto.

128.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department,  all under the supervision of ranking officers of said department.

129.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the Defendants City and/or NYPD which is otherwise forbidden by the Constitutions of the United States and the State of New York.

130.    The acts complained of deprived the Plaintiff of his rights:

a.    Not to enter into a private dwelling without obtaining a warrant;

b.    Not to enter into a private dwelling absent complying with the U.S. and New York Constitutions, and related statutes;

    c.      Not to search a private dwelling absent complying with the U.S. and New York Constitutions, and related statues;

    d.      Not to use excessive force in entering a private dwelling;

    e.      To treat all private citizens with equal protection under the law; and

    f.      To be free from Constitutional Malicious Prosecution.

131.    The foregoing violations of the Plaintiff's Constitutional rights were undertaken under color of law, statutes, regulations and Constitution of the State of New York.

132.    As a result of the foregoing conduct by Defendants herein, the Plaintiff, Michael Hardy has been damaged in an amount to be determined by this Court, but in no event less than FIVE MILLION ($5,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS as against Defendant Police Officers, including Defendants Meyers Chambers and Tyborowski, comprising the individual defendants.

## PLAINTIFF MICHAEL HARDY'S SECOND CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983 & 13th Amendment)

133.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122" and "124" to "132" with the same force and effect as if herein more fully set forth.

134.    Defendants wrongfully and improperly paraded the Plaintiff, Michael Hardy, in front of the general public, partially naked, without shoes nor a sock on his left foot, creating an image reminiscent of the treatment of the African slaves prior to 1861 and the later passage of the 13th Amendment to the U.S. Constitution.

135. Defendants' degrading treatment of Mr. Hardy was in violation of his due process rights and the 13th Amendment's bar to the badges and incidents of slavery.

136. Defendants, through the conduct of the arresting officers, including the "white-shirt officer" who was supervising them, while acting under color of state law and within the scope of their employment, willfully and recklessly disregarded the Plaintiff, Michael Hardy's rights to be free from the "badges" and "incidents" of slavery and due process of law, as provided under the 13th Amendment to the United States Constitution, Section 1 of the New York State Constitution and the New York State Emancipation Act of 1799, as amended.

137. All of the above Defendant Police Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiff, Michael Hardy of his rights, privileges and immunities secured to him by the 13th Amendment to the United States Constitution, Section 1 of the New York State Constitution and the New York State Emancipation Act of 1799, as amended.

138. The acts complained of deprived the Plaintiff, Michael Hardy of his rights:

   a. Not to threaten and intimidate private citizens, such as the Plaintiff, Michael Hardy, with treatment due to his race and color hardship;

   b. Not to be subjected to being displayed in a manner recalling the "badges" and "incidents" of slavery; and,

   c. To receive equal protection under the law.

139. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

140. As a result of the foregoing conduct by Defendants herein, the Plaintiff, MICHAEL HARDY has been damaged in an amount to be determined by this Court, but not less than FIVE MILLION ($5,000,000.00) DOLLARS and punitive damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS as against Defendant Police Officers, including Defendants Meyers Chambers and Tyborowski, comprising the individual defendants.

### PLAINTIFF MICHAEL HARDY'S THIRD CLAIM FOR RELIEF
(*Monell* Claim Against Defendants City & Keechant L. Sewell)

141. The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132" and "134" to "140" with the same force and effect as if herein more fully set forth.

142. Defendants City and/or Sewell was/were obligated to provide rules, regulations and training concerning safe processes and procedures for members of Defendant NYPD in conducting and handling the entry into the dwellings of private citizens, including, but limited to the Plaintiff, Michael Hardy herein.

143. Defendants City and/or Sewell was/were obligated to provide rules, regulations and training concerning safe processes and procedures for members of Defendant NYPD in responding and handling claims of private citizens, including but not limited to the Plaintiff, Michael Hardy herein, regarding claims for entry into her private dwellings by members of Defendant NYPD, and responding to claims for damages as a result of such entry.

-23-

144. Defendants City and/or Sewell, as the Defendants responsible for the policies, practices and/or customs of Defendant NYPD, acted with deliberate indifference to the rights of those who come into contact with Defendant NYPD by failing to:

   a.   Properly train, screen and supervise;

   b.   Inadequately monitor NYPD Officers in entering the dwellings of members of the public, including the Plaintiff, Michael Hardy's Apartment 5Z herein, so as to avoid the use of improper entry into his dwellings;

   c.   Inadequately monitor NYPD Officers in entering the dwellings of members of the public, including the Plaintiff, Michael Hardy's Apartment 5Z herein, so as to avoid the use unnecessary and improper use of force so as to avoid damage in entering into her dwellings;

   d.   Require members of Defendant NYPD, including the Defendant Police Officers herein, to not use disparate force and treatment against minority members, including persons of African-American descent such as the Plaintiff herein.

145. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

146. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendants City and NYPD all under the supervision of ranking officers of said department.

147.   The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff, Michael Hardy.

148.   The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, Michael Hardy herein.

149.   The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the moving force behind the constitutional violations suffered by the Plaintiff, Michael Hardy herein.

150.   As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD, the Plaintiff, Michael Hardy was subjected to unlawful and excessive damages and violations of his constitutional rights.

151.   The individual Defendant Police Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate Police Officers, and were directly responsible for the violation of the Plaintiff, Michael Hardy's constitutional rights.

152.   The individual Defendant Police Officers, by their conduct, deprived the Plaintiff, Michael Hardy of his Federally protected rights, including, but not limited to, the right:

a.      Not to improperly enter her dwelling;

b.      Not to have summary punishment imposed upon her without due process;

-25-

  c.  Not to have excessive force imposed upon her property; and,

  d.  To receive equal protection under the law.

153. As a result of the foregoing, the Plaintiff, Michael Hardy sustained, *inter alia*, violation of her right to property and privacy of his dwelling, emotional distress, embarrassment, humiliation, deprivation of her constitutional rights and is entitled to compensatory of FIVE MILLION ($5,000,000.00) DOLLARS.

### PLAINTIFF MICHAEL HARDY'S FOURTH CLAIM FOR RELIEF
**(First Supplemental Claim Against Municipal Defendants)**

154. The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "140" and "142" to "153" with the same force and effect as if herein more fully set forth.

155. The Plaintiffs assert Supplemental Jurisdiction over claims arising under New York law, 28 USC § 1367.

156. The Supplemental claims fall within one or more of the exceptions as outlined in New York local law, C.P.L.R. § 1602.

157. The Plaintiff Michael Hardy has complied with all conditions precedent under New York Law:

  a.  On April 6, 2022, the Plaintiff Michael Hardy served a Notice of Claim on Defendants City of New York and NYPD;

  b.  On April 27, 2022, the Plaintiff Michael Hardy served an Amended Notice of Claim on Defendants City of New York and NYPD; and

  c.  On August 16, 2022, the Plaintiff Michael Hardy served a Second Amended Notice of Claim on Defendants City of New York and NYPD.

d.      The Plaintiff Michael Hardy has complied with Section 50-e of the N.Y. General Municipal Law;

e.      Prior to the commencement of this action at least 30 days have elapsed since the service of the said Notice of Claim pursuant N.Y. General Municipal Law § 50-e, and the adjustment or payment has been neglected and/or refused.

f.      The Supplemental State claims in this action are timely commenced within one-year and 90-days after the happening of the events herein pursuant to N.Y. General Municipal Law Section § 50-i.

158.    Defendants City and/or NYPD by their employees, agents and/or servants committed trespass and otherwise used excessive force against the Plaintiff, Michael Hardy's apartment.

159.    As a result of the individual Defendant Police Officers' conduct, the Plaintiff, Michael Hardy has suffered damages, including mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

160.    As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION and SEVEN THOUSAND ($1,007,000.00) DOLLARS as against the Defendants.

**PLAINTIFF MICHAEL HARDY'S FIFTH CLAIM FOR RELIEF**
**(Second Supplemental Claim Against Municipal Defendants)**

161.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "130," "134" to "140," "142" to "151" and "155" to "160" with the same force and effect as if herein more fully set forth.

-27-

162.   Defendants City and/or NYPD failed to properly trained, retained, assigned and supervised all members of said its Police Department, including the individual Defendant Police Officers named above.

163.   Due to the failure of Defendants City and/or NYPD to properly train all members of said Police Department, including the individual Defendant Police Officers, the Plaintiff, Michael Hardy suffered mental injury, pain and trauma, together with embarrassment, humiliation shock, fright, and loss of freedom and is entitled to compensatory damages in an amount to be determined at Trial.

   a.   Defendants City and/or NYPD were further negligent in supervision and control of the Defendant Police Officers, including their conduct resulting in arresting the Plaintiff, Michael Hardy and his later criminal prosecution;

   b.   Defendants wrongfully and/or negligently falsely arrested and used excessive force against the Plaintiff, Michael Hardy;

   c.   Defendants conduct further constituted malicious prosecution and abuse of process against the Plaintiff, Michael Hardy.

164.   As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION and SEVEN THOUSAND  ($1,007,000.00) DOLLARS as against the defendants.

### PLAINTIFF MICHAEL HARDY'S SIXTH CLAIM FOR RELIEF
#### (Second Supplemental Claim Against Municipal Defendants)

165.   The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "140," "142" to "153," "155" to "160" and "162" to "164" with the same force and effect as if set forth herein.

-28-

166.   The criminal charges brought by Defendant Police Officers, and particularly Defendant Chambers, Tyborowski and Meyers were false and untrue.

167.   These Defendants knew or should have known there statements and representations regarding Mr. Hardy's conduct were false and untrue.

168.   These Defendants had no valid nor proper reason for the criminal charges they made against Mr. Hardy as evidenced by their dismissal on August 8, 2022.

169.   As a result of Defendants wrongful and malicious conduct and abuse of process, Mr. Hardy was damaged.

170.   As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION and SEVEN THOUSAND ($1,007,000.00) DOLLARS compensatory ONE MILLION ($1,000,000.00) DOLLARS punitive damages and as against these individual Defendant police officers.

### PLAINTIFF MICHAEL HARDY'S SEVENTH CLAIM FOR RELIEF
**(Second Supplemental Claim Against Municipal Defendants)**

171.   The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155" to "160," "162" to "164" and "166" to "170" with the same force and effect as if herein more fully set forth.

172.   The individual Defendant Police Officers, and particularly Defendant Chambers, Tyborowski and Meyers knew or should have known Mr. Hardy was on probation.

173. The individual Defendant Police Officers, and particularly Defendant Chambers, Tyborowski and Meyers knew or should have known that the false and malicious criminal charges they made against Mr. Hardy would create a situation which would violate his probation.

174. As a result of the abuse of process by the individual Defendant Police Officers, and particularly Defendant Chambers, Tyborowski and Meyers, Mr. Hardy had to endure and defend himself against charges that he Violated his Probation.

175. On August 15, 2022, the VOP charges were withdrawn and the Violation of Probation proceedings were terminated in Mr. Hardy's favor.

176. As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION and SEVEN THOUSAND ($1,007,000.00) DOLLARS compensatory ONE MILLION ($1,000,000.00) DOLLARS punitive damages and as against these individual Defendant police officers.

## PLAINTIFF DIANE SHEPHERD'S FIRST CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983)

177. The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155" to "160," "162" to "164," "166" to "170" and "172" to "176" with the same force and effect as if herein more fully set forth.

178. All of the above Defendant Police Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the

-30-

Plaintiff, Diane Shepherd of her rights, privileges and immunities secured to her by the Constitutions and laws of the United States and New York.

179.   All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

180.   All of the aforementioned acts deprived the Plaintiff, Diane Shepherd of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth,  Eighth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

181.   The acts complained of were carried out by the aforementioned individual Defendants in their capacities as Police Officers, with all the actual and/or apparent authority attendant thereto.

182.   The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendants City and NYPD, all under the supervision of ranking officers of said department.

183.   Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, forbidden by the U.S. Constitution.

184.   The acts complained of deprived the Plaintiff, Diane Shepherd of her Constitutional Rights:

a.      Not to have excessive force imposed upon her;

b.      Not to have summary punishment imposed upon her;

     c.       Not to be charged with false and inaccurate charges;

     d.       To receive equal protection under the law; and

     e.       To be free from Constitutional Malicious Prosecution.

185.    The foregoing violations of the Plaintiff, Diane Shepherd's Constitutional rights were undertaken under color of law, statutes, regulations and Constitution of the State of New York.

186.    As a result of the foregoing conduct by Defendants herein, the Plaintiff, Diane Shepherd has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

**PLAINTIFF DIANE SHEPHERD'S SECOND CLAIM FOR RELIEF**
**(Violation of Civil Rights, 42 USC § 1983)**

187.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155" to "160," "162" to "164," "166" to "170," "172" to "176" and "178" to "186" with the same force and effect as if herein more fully set forth.

188.    As a result of Defendants' aforementioned conduct, the Plaintiff, Diane Shepherd was subjected to an illegal, improper and false arrest by the individual Defendant Police Officers and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any reasonable nor probable cause, privilege or consent under the U.S. and New York Constitutions.

189.    As a result of the foregoing, the Plaintiff, Diane Shepherd sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and has been damaged in an amount to be determined at trial. As a result of the foregoing conduct by Defendants herein, the Plaintiff, Diane Shepherd has been damaged in an amount to be determined by this Court. As a result of the foregoing conduct by Defendants herein, the Plaintiff, Diane Shepherd has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

## PLAINTIFF DIANE SHEPHERD'S THIRD CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983)

190.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155" to "160," "162" to "164," "166" to "170," "172" to "176," "178," to "186" and "188" to "189" with the same force and effect as if herein more fully set forth.

191.    As a result of the foregoing, the Plaintiff, Diane Shepherd was subjected to an illegal and improper strip search after her unlawful seizure from a lawful residential dwelling without warrant or consent.

192.    The foregoing unlawful search and seizure violated the Plaintiff, Diane Shepherd's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution and Article I, Section 6 of the New York Constitution.

193.    As a result of the foregoing, the Plaintiff, Diane Shepherd sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

### PLAINTIFF DIANE SHEPHERD'S FOURTH CLAIM FOR RELIEF
**(Violation of Civil Rights, 42 USC § 1983)**

194.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155" to "160," "162" to "164," "166" to "170," "172" to "176," "178," to "186," "188" to "189" and "191" to "193" with the same force and effect as if herein more fully set forth.

195.    The Defendant Police Officers willfully misrepresented and falsified evidence resulting in criminal charges being brought against the Plaintiff, Diane Shepherd.

196.    Defendant Police Officers were directly and actively involved in the initiation of criminal proceedings against the Plaintiff, Diane Shepherd.

197.    The individual Defendant Arresting Officers lacked probable cause to initiate criminal proceedings against the Plaintiff, Diane Shepherd.

198.    The individual Defendant Arresting Officers lacked probable cause to initiate criminal charges against the Plaintiff, Diane Shepherd concerning her obstructing governmental administration and six charges of possession of a weapon in the fourth degree and criminal possession of heroin.

199.    The individual Defendant Arresting Officers acted with malice in initiating criminal proceedings against the Plaintiff, Diane Shepherd

200.    The Defendant Arresting Officers were directly and actively involved in the continuation of criminal proceedings against the Plaintiff, Diane Shepherd.

201.    Defendants lacked probable cause to continue criminal proceedings against the Plaintiff, Diane Shepherd.

202.    Defendants acted with malice in continuing criminal proceedings against the Plaintiff, Diane Shepherd.

203.    The individual Defendant Police Officers misrepresented and falsified evidence throughout all phases of the criminal proceedings.

204.    Notwithstanding Defendants' perjurious and fraudulent conduct, the criminal proceedings were terminated in Ms. Shepherd's favor on May 31, 2022 when all the charges against her were dismissed.

205.    As a result of the foregoing, the Plaintiff, Diane Shepherd sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

### PLAINTIFF DIANE SHEPHERD'Ss FIFTH CLAIM FOR RELIEF
(*Monell* Claim Against Defendants City & Sewell)

206.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155"

to "160," "162" to "164," "166" to "170," "172" to "176," "178," to "186," "188" to "189," "191" to "193" and "195" to 205" with the same force and effect as if herein more fully set forth.

207.    Defendants City and/or Sewell was/were obligated to provide rules, regulations and training concerning safe processes and procedures for members of Defendant NYPD in conducting and handling the entry into the dwellings of private citizens.

208.    Defendants City and/or Sewell was/were obligated to provide rules, regulations and training concerning safe processes and procedures for members of Defendant NYPD in responding and handling claims of private citizens, including but not limited to the Plaintiff, Diane Shepherd herein, regarding claims for entry into his private dwellings by members of Defendant NYPD, and the use of force.

209.    Defendants City and/or Shepherd as the Defendants responsible for the policies, practices and/or customs of Defendant NYPD, acted with deliberate indifference to the rights of those who come into contact with Defendant NYPD by failing to:

a.    Properly train, screen and supervise;

b.    Inadequately monitor NYPD Officers in entering the dwellings of members of the public, including the "Apartment 5Z" herein, so as to avoid the use of improper entry into his dwellings;

c.    Inadequately monitor NYPD Officers in entering the dwellings of members of the public, including the "Apartment 5Z" herein, so as to avoid the improper entry into such dwelling without warrant;

d. Require members of Defendant NYPD, including the Defendant Police Officers herein, to not use disparate force and treatment against minority members, including persons of African-American descent such as the Plaintiff herein;

e. Not to utter false statements constituting crimes against members of the public, such as the Plaintiff, Diane Shepherd; and

f. Not to take retaliatory conduct against members of the public who are taking video images of the improper and unlawful conduct of members of Defendant NYPD, including the Defendant Police Officers herein.

210. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

211. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendants City and NYPD all under the supervision of ranking officers of said department.

212. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff, Diane Shepherd.

213. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, Diane Shepherd herein.

214.   The foregoing customs, policies, usages, practices, procedures and rules of
Defendants City and/or NYPD were the moving force behind the constitutional
violations suffered by the Plaintiff, Diane Shepherd herein.

215.   As a result of the foregoing customs, policies, usages, practices, procedures and
rules of Defendants City and/or NYPD, the Plaintiff, Diane Shepherd was
subjected to unlawful and excessive damages and violations of her constitutional
rights.

216.   The individual Defendant Police Officers, collectively and individually, while
acting under color of state law, acquiesced in a pattern of unconstitutional conduct
by subordinate Police Officers, and were directly responsible for the violation of
the Plaintiff, Diane Shepherd's constitutional rights.

217.   The individual Defendant Police Officers, by their conduct, deprived the Plaintiff,
Diane Shepherd of her Federally protected rights, including, but not limited to, the
right:

a.   To be free from unwarranted, improper entry into Apartment 5Z;

b.   Not to be subject to excessive force imposed upon her person;

c.   To receive equal protection under the law; and

d.   Not to be the subject of police retaliation due to her taking a video of
Defendant Police Officer's wrongful conduct.

218.   As a result of the foregoing, the Plaintiff, Diane Shepherd sustained, *inter alia*,
violation of her right to property and privacy in Apartment 5Z, emotional distress,
embarrassment, humiliation, deprivation of her constitutional rights and is entitled

to compensatory and punitive damages in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

### PLAINTIFF DIANE SHEPHERD'S SIXTH CLAIM FOR RELIEF
#### (First Supplemental Claim Against Municipal Defendants)

219.   The Plaintiff, Michael Hardy repeats and realleges each and every allegation in paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155" to "160," "162" to "164," "166" to "170," "172" to "176," "178," to "186," "188" to "189," "191" to "193," "195" to 205" and "207" to "218" with the same force and effect as if herein more fully set forth.

220.   The Plaintiff Diane Shepherd asserts Supplemental Jurisdiction over claims arising under New York law, 28 USC § 1367.

a.   The Plaintiff Diane Shepherd has complied with all conditions precedent under New York Law:

b.   On April 6, 2022, the Plaintiff Diane Shepherd served a Notice of Claim on Defendants City of New York and NYPD;

c.   On April 27, 2022, the Plaintiff Diane Shepherd served an Amended Notice of Claim on Defendants City of New York and NYPD; and

d.   The Plaintiff Diane Shepherd has complied with Section 50-e of the N.Y. General Municipal Law;

e.   Prior to the commencement of this action at least 30 days have elapsed since the service of the said Notice of Claim pursuant N.Y. General

Municipal Law § 50-e, and the adjustment or payment has been neglected and/or refused.

f.    The Supplemental State claims in this action are timely commenced within one-year and 90-days after the happening of the events herein pursuant to N.Y. General Municipal Law Section § 50-i.

221.    The Supplemental claims fall within one or more of the exceptions as outlined in New York local law, C.P.L.R. § 1602.

222.    On February 25, 2022, Defendant Chambers verified a Criminal Court complaint against Plaintiff, Diane Shepherd.

223.    Defendant Chambers statements were false, or otherwise lacked probable cause for the claims made against the Plaintiff, Diane Shepherd.

224.    Defendant Chambers was motivated by actual malice in commencing said criminal proceeding against the Plaintiff, Diane Shepherd.

225.    Defendant Surajbali was motivated by actual malice to charging the Plaintiff, Diane Shepherd with the three crimes.

226.    On May 31, 2022, the criminal charges against Ms. Shepherd were terminated in her favor.

227.    As a result of the aforementioned conduct, the Plaintiff, Diane Shepherd suffered physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

228.    As a result of the foregoing, the Plaintiff, Diane Shepherd sustained, *inter alia*, violation of her right to property and privacy in Apartment 5Z, emotional distress,

embarrassment, humiliation, deprivation of her constitutional rights and is entitled

to compensatory and punitive damages in an amount to be determined by this

Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive

damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against

the individual defendants.

### PLAINTIFF DIANE SHEPHERD'S SEVENTH CLAIM FOR RELIEF
#### (Second Supplemental Claim Against Municipal Defendants)

229.    The Plaintiff, Michael Hardy repeats and realleges each and every allegation in

paragraphs "1" to "122," "124" to "132," "134" to "149," "142" to "153," "155"

to "160," "162" to "164," "166" to "170," "172" to "176," "178," to "186," "188"

to "189," "191" to "193," "195" to 205," "207" to "218" and "220" to "228" with

the same force and effect as if herein more fully set forth.

230.    Defendants City and/or NYPD were negligent in supervision and control of the

Defendant Police Officers, including their conduct resulting in arresting the

Plaintiff, Diane Shepherd and her later criminal prosecution.

231.    Defendants wrongfully and/or negligently falsely arrested and used excessive

force against the Plaintiff, Diane Shepherd.

232.    Defendants conduct further constituted malicious prosecution and abuse of

process against athe Plaintiff, Ms. Shepherd.

233.    As a result Defendants' conduct, the Plaintiff, Diane Shepherd sustained *inter

alia*, emotional distress, embarrassment and humiliation, loss of liberty, and

deprivation of her constitutional rights.

234.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

WHEREFORE, Plaintiff respectfully prays this Court for a judgment as follows:

A)  FIVE MILLION ($5,000,000.00) DOLLARS compensatory on the First, Second and Third Claims for Relief on behalf of the Plaintiff, Michael Hardy as against all Defendants and that said judgment be jointly and severally on behalf of the Plaintiff Michael Hardy;

B)  FIVE MILLION ($5,000,000.00) DOLLARS punitive damages on the First, Second and Third Claims for Relief on behalf of the Plaintiff, Michael Hardy as against the individual Police Officer Defendants, including Defendants Captain Larry Meyers, Police Officer Kiersten L Chambers and Police Officer Konrad Tyborowski  and that said judgment be jointly and severally on behalf of the Plaintiff Michael Hardy;

C)  ONE MILLION and SEVEN THOUSAND ($1,007,000.00) DOLLARS damages on the Fourth, Fifth, Sixth and Seventh Claims for Relief on behalf of the Plaintiff, Michael Hardy against Defendants jointly and severally;

D)  FIVE MILLION ($5,000,000.00) DOLLARS compensatory on the First, Second, Third, Fourth and Fifth Claims for Relief on behalf of the Plaintiff, Diane Shepherd as against all Defendants and that said judgment be jointly and severally on behalf of the Plaintiff Diane Shepherd;

E)      FIVE MILLION ($5,000,000.00) DOLLARS punitive damages on the

First, Second, Third and Fourth Claims for Relief on behalf of the

Plaintiff, Diane Shepherd as against the individual Police Officer

Defendants, including Defendants Captain Larry Meyers and Police

Officer Kiersten L Chambers and that said judgment be jointly and

severally on behalf of the Plaintiff Michael Hardy;

F)      ONE MILLION ($1,000,000.00) DOLLARS damages on the Sixth and

Seventh Claims for Relief on behalf of the Plaintiff, Diane Shepherd as

against Defendants jointly and severally;

G)      Reasonable attorneys fees pursuant to 42 U.S.C. §§ 1988 in an amount to

be determined by this Court.

as well as costs, fees disbursements.

Dated:  New York, N.Y.
        May 22, 2023

> Yours, etc.,
> MATTHEW A. KAUFMAN, ESQ.
> s/ *Matthew A. Kaufman*
> By: Matthew A. Kaufman - (MK 0598)
> Attorney for Plaintiffs Michael Hardy and
>                         Diane Shepherd
> 225 Broadway - Suite 1606
> New York, N.Y. 10007
> Tel. No. (212) 619-2200
> MAK File No.          15,643.301
> makaufman01@yahoo.com
>
> **ALTERNATE COVID-19 ADDRESS**
> P.O. Box 337
> Woodridge, N.Y. 12789-0337

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Docket No.    23 CV 3794

MICHAEL HARDY and DIANE SHEPHERD,

Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al.*,

Defendant.

COMPLAINT

**MATTHEW A. KAUFMAN**

ATTORNEY FOR MICHAEL HARDY AND
DIANE SHEPHERD

225 BROADWAY - SUITE 1606
NEW YORK, N.Y. 10007
TEL. NO. (212) 619-2200
CELL NO. (917) 319-5665
MAKAUFMAN01@YAHOO.COM
MAK FILE NO.   15,643.301.

**ALTERNATE COVID-19 ADDRESS**
P.O. BOX 337
WOODRIDGE, N.Y. 12789-0337